IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RADIANCE CAPITAL RECEIVABLES THIRTEEN, LLC, as Assignee of CITIBANK, N.A.,<br><br>    Plaintiff,<br><br>    v.<br><br>ACCURATE STEEL INSTALLERS, INC., an Illinois corporation; PERDEL CONTRACTING CORPORATION, an Illinois corporation; and ELIZABETH PERINO, Individually,<br><br>    Defendants.<br><br>ELIZABETH PERINO, Trustee of the Elizabeth Perino Irrevocable Trust; and ELIZABETH PERINO,<br><br>    Citation Respondents. | Case No. 13 C 7481<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Plaintiff Radiance Capital Receivables Thirteen, LLC ("Radiance") has won turnover of one parcel of real estate from Defendant Elizabeth Perino ("Perino"). Radiance now seeks a ruling that its judgment lien on that real estate takes priority over the mortgage on the same held by Perino's lawyers, Cooney, Corso and Moynihan, LLC ("CCM"). For the reasons stated herein,

the Court leaves intact its previous ruling (ECF No. 69) but denies Radiance the priority ruling it seeks.

## I. BACKGROUND

This is a supplemental ruling reached after the Court ordered, and the parties produced, additional briefing on Radiance's Motion for Turnover. (ECF No. 56.) The Court assumes familiarity with the facts described in its earlier opinion and now recounts them only briefly. (*See,* March 5, 2018 Mem. Op. and Order, ECF No. 69.) Perino owns the Willowbrook Property, a residential parcel apparently worth fighting over. An unrelated mortgagor has already initiated foreclosure proceedings on the Property, and two parties—Radiance, Citibank's judgment assignee, and CCM, Perino's attorneys—claim rights to second take of the proceeds. The most important events are these: In August 2013, Perino transferred the Property to an irrevocable trust. In March 2014, Citibank recorded a judgment against Perino. Then in June 2014, CCM agreed to represent Perino on the condition that she pay them in advance by mortgaging the Willowbrook Property to CCM. CCM later recorded that mortgage in June 2015. (*Id.* at 2-5 (summarizing facts of the case).) Finally, in March 2018, this Court held that Perino's August 2013 transfer was fraudulent and thus void under the Illinois Uniform Fraudulent Transfer Act. (*Id.* at 15-16.) That ruling

returned the Property from the trust to Perino's hands and rendered it susceptible to her creditors, including Radiance. However, because by the time of that ruling the parties had not yet briefed the issue of lien priority between Radiance and CCM, the Court ordered further briefing limited to that subject. (*Id.*) Ultimately, the question of priority comes down to whether CCM's mortgage—agreed to when the Property was held by Perino's nominally irrevocable trust, and thus ostensibly shielded from creditors like Radiance—is entitled to protection under the bona fide purchaser rule. If so, CCM's mortgage takes priority over Radiance's claim. If not, the priority goes to Radiance.

## II. **DISCUSSION**

CCM may prove they were bona fide purchasers if they paid value for the mortgage and did so without notice that their rights in the mortgage could be imperiled by the proceedings against Perino. *See, Sobilo v. Manassa,* 479 F. Supp. 2d 805, 824 (N.D. Ill. 2007) (citing *First Midwest v. Pogge,* 687 N.E.2d 1195, 1198 (Ill. App. Ct. 1997)). First, CCM clearly gave value: They accepted the mortgage as an advanced payment retainer in exchange for representing Perino, which they have done and continue to do. The question, then, is whether CCM was

on notice back in June 2015 that Radiance had a superior claim to the Property.

Radiance says this analysis is straightforward. Citibank, its predecessor in interest, recorded the judgment in DuPage County against Perino about one year before CCM accepted the mortgage. From that moment on, Citibank had a judgment lien on all real estate Perino owned in DuPage County. 735 ILCS 5/12-101. Lien priority is determined in Illinois by the "first-in-time, first-in-right" rule. 765 ILCS 5/30; *Aames Capital Corp. v. Interstate Bank of Oak Forest,* 734 N.E.2d 493, 496 (Ill. App. Ct. 2000). Under this rule, Citibank's recorded judgment gave it a trump card in lien contests with subsequent purchasers or encumbrancers so long as those parties were not bona fide purchasers for value without notice of Citibank's lien. *See, First Midwest,* 687 N.E.2d at 1198. According to Radiance, CCM does not fit the "bona fide purchaser" mold because Citibank's earlier-recorded judgment against Perino put CCM on notice of Citibank's lien against the Willowbrook Property. "[A] prospective purchaser of real estate or of an interest in real estate is chargeable with knowledge of what appears in the grantor-grantee index, the legal record required to be maintained by the Recorder." *In re Heaver,* 473 B.R. 734, 737-38 (Bankr. N.D. Ill. 2012) (quoting *Landis v. Miles Homes Inc.,* 273

N.E.2d 153, 155 (Ill. App. Ct. 1971)), *aff'd sub nom. Branch Banking & Tr. Co. v. Olsen,* No. 14 C 50027, 2014 WL 2154906 (N.D. Ill. May 22, 2014). Radiance reasons that when CCM conducted due diligence before agreeing to the Willowbrook mortgage, CCM should have seen the judgment against Perino and thus had notice that their potential property rights in Willowbrook would be imperiled by Citibank's prior lien. *First Midwest,* 687 N.E.2d at 1199. Finally, Radiance notes that it automatically succeeded to Citibank's 2014 priority filing date when Citibank assigned over the judgment. *Fed. Nat. Mortgage Ass'n v. Kuipers,* 732 N.E.2d 723, 728-29 (Ill. App. Ct. 2000) (mortgage assignee is not required to record assignment to maintain priority position of its assignor over subsequently filed judgment lien).

There is a wrinkle on this last point which requires some digression. CCM now points out (for the first time) that Radiance executed the assignment of judgment from Citibank to itself pursuant to a limited power of attorney ("LPOA") that actually expired about two weeks before Radiance executed the assignment. (*See,* Modified Assignment of Judgment, ECF No. 26.) CCM appears to be right, although they ignore that Radiance earlier filed a timely executed assignment (which misstated the date and value of the assigned judgment, apparently requiring

- 5 -

the later filing of the modified assignment). (*See,* Original Assignment of Judgment, ECF No. 25.) Because this issue does not affect the Court's analysis, we will not wade further in. If Citibank has not properly assigned the judgment to Radiance, the contest at bar is not changed. Either the judgment lien or CCM's mortgage takes priority, and the Court needs to sort out which. For present purposes, the precise ownership of the lien does not much matter.

Turning back to the merits of the dispute, the heart of CCM's rebuttal is simple: "It is not enough that [an encumbrance] be recorded in the grantor-grantee index. To constitute constructive notice, a recorded [encumbrance] 'must be in the chain of title.'" *Heaver,* 473 B.R. at 737-38 (quoting *Landis*, 273 N.E.2d at 155). By the time CCM conducted their due diligence into Willowbrook, Perino no longer owned that Property; *her trust did*. And while a judgment against an individual becomes a lien on that person's real estate once it is recorded, no lien manifests on real estate when a creditor records judgment against the beneficiary of a land trust that holds that property. *First Fed. Sav. & Loan Ass'n of Chi. v. Pogue,* 389 N.E.2d 652, 655 (Ill. App. Ct. 1979). CCM now explains that when they looked up the Property in the grantor/grantee index, they only searched under the trust—and

not under Perino herself—because the trust was the title holder of the Property. The Citibank lien did not appear in that search result (although it would have appeared had CCM searched for Perino's name instead). CCM thus maintain they did what was required of them: They searched the grantor/grantee index for the trust, which was the uncontested owner of record at the time. CCM say they agreed to the mortgage in good faith, believing it was protected from judgment by the trust, and this Court's subsequent fraudulent transfer determination cannot strip away their good faith defense.

Although an imperfect fit, the Court finds a useful comparison in *In re Duckworth,* No. 11-8104, 2012 WL 4434681 (Bankr. C.D. Ill. Sept. 24, 2012). In that case, creditors held rights in a debtor's crops. *Id.* at *1. Before filing for bankruptcy, the debtor established shell corporations for the purpose of selling grain free of the creditors' liens. *Id.* Those two shell corporations established bank accounts to collect the grain-sale proceeds, and then disbursed those funds into the newly created bank account of a third shell corporation. *Id.* After the debtor filed for bankruptcy, the third shell corporation paid about $1,200 of the collected grain-sale proceeds to a general store for purchases related to the debtor's living expenses. *Id.* The bankruptcy trustee

brought an adversary proceeding against the general store, seeking to avoid the $1200 payment it received from the shell corporation. *Id.* at *2 (citing 11 U.S.C. §§ 549-550 (permitting avoidance of unauthorized post-petition transfers)). Under Section 550 of the Bankruptcy Code, an avoided transfer can be recovered from the "initial transferee"; avoided transfers can also be recovered from an "immediate or mediate" transferee of the initial transferee unless that subsequent transferee took the transfer for value, in good faith, and without knowledge of its voidability. *Id.* at *2; *cf. Sobilo v. Manassa*, 479 F. Supp. 2d 805, 824 (N.D. Ill. 2007) (describing bona fide mortgagor defense for mortgagors who pay value, in good faith, without notice that their rights could be imperiled by ongoing proceedings). The debtor later pled guilty to money laundering and bankruptcy fraud, so by the time the parties appeared before the *Duckworth* court there was no dispute that the grain transfer to the shell corporations was fraudulent and avoidable. Thus, the *Duckworth* court had only to determine whether, in the final transfer of funds from the shell corporation to the general store, the store had been a good faith, mediate transferee and thus shielded from liability. *Id.* at *5.

Two of that court's analyses are relevant here. First, the court determined that the deposit of grain-sale proceeds into

- 8 -

the shell accounts constituted a valid transfer of title, even though the transfer was later determined to be fraudulent:

> The trustee relies heavily on the undisputed fact that the transfers were made to enable the Debtor to perpetrate a fraud upon his secured creditors. Whether a transfer of title is made, however, is not dependent upon the transferor's reasons for making it. **That a transfer effective at the time made may later be undone by court order for reasons of illegality or fraud is a separate issue unrelated to whether the transfer occurred in the first instance.**

*Id.* at *3 (emphasis added). Second, the court rejected the trustee's argument that because the shell corporations were simply alter-egos of the debtor, the general store was an initial transferee—not a mediate transferee, which requires another degree of separation from the debtor—and as such the general store could not assert the good faith defense available only to immediate/mediate transferees. The court opined that the trustee's "creative attempt . . . to entirely reconfigure the factual landscape" did not pass muster. *Id.* at *7. Accordingly, the court "refused to frustrate" what was, at the time, a legitimate transfer. *Id.* (quoting *In re Lawler,* 53 B.R. 166, 169 (Bankr. N.D. Tex. 1985)).

Here, both *Duckworth* rationales have traction for the same reason. Had this Court not found Perino's Willowbrook transfer to be fraudulent, the property would still sit in the protective hands of the trust and CCM's mortgage would not have to tussle

with Radiance's judgment lien. (*But see,* March 5, 2018 Mem. Op. and Order (never ruling on whether the trust was legitimately irrevocable).) The fact that the Court later stripped the Property of protection does not mean, for the purposes of the bona fide purchaser analysis, that CCM should have had notice *ex ante* that their mortgage priority was at risk.

Admittedly there is daylight between this case and *Duckworth,* which is after all a bankruptcy case. The analogy is also imperfect on the facts, most significantly because CCM do not fit neatly into the general store's shoes. The arguably good-faith purchaser here is not some third-party shopkeeper wholly ignorant of the debtor's troubles, 2012 WL 4434681, at *3, but rather a firm of lawyers integrally involved in the debtor's business and uniquely aware of her finances. Bona fide purchasers are protected because they cannot "be expected to have notice that their property rights [are] in peril." *First Midwest*, 687 N.E.2d at 1199 (citation omitted). So in determining whether CCM is a good faith mortgagor, we must ask what they knew, and when. Radiance did not file a *lis pendens* against the property until July 27, 2017. Had they done so before CCM acquired an interest in Willowbrook, CCM would have been bound to the results of pending proceedings that affected their lien priority on that property. *Id.* at 1198 (citation

omitted); *accord In re Leonard,* 125 F.3d 543, 545 (7th Cir. 1997) ("[A *lis pendens*] gives notice to purchasers of the land that there may be superior interests."). But a *lis pendens* is a sufficient but not necessary means of alerting future encumbrancers as to material and pending proceedings; actual notice also suffices. *Id.* at 1198-99 (citing *Allen & Korkowski & Assocs. v. Pettit,* 439 N.E.2d 102, 108 (Ill. App. Ct. 1982)).

Although the Court can conceive of ways that CCM could have had actual notice that the supplementary proceedings against Perino might impact the lien priority on the Willowbrook Property, the record does not bear them out. CCM executed the mortgage on June 29, 2014, and they appeared with Perino the next day in opposing counsel's office to discuss and produce documents under the first citation. Clearly CCM knew Perino had a judgment out against her. It is not clear, however, that CCM was on notice that said judgment had any way of reaching the Property (then held by the nominally irrevocable trust). The third-party citation as to the trust did not issue until April 2016. Indeed, the only indication CCM had in June 2014 that Radiance might even consider trying to reach the trust's assets came in the form of a May 2014 letter from Radiance's counsel in which she requests that Perino produce several documents under the first citation, including a copy of the trust. (Pantoga

Letter, Ex. 2 to Pantoga Affidavit, ECF No. 70-1.)  Such a request for information related to all assets held by or benefitting a cited debtor is routine, and there is no reason in the record to believe this standard request should have shaken CCM from their belief that a mortgage on the trust-shielded Property would be safe from the judgment creditor.  Perhaps there are facts out there dictating a contrary conclusion, but the Court does not see them now.

### III. <u>CONCLUSION</u>

For the reasons stated herein, the Court's March 5, 2018 opinion stands, and the Court further orders that because CCM is a bona fide mortgagor for value, CCM's mortgage has priority over the judgment lien on the Willowbrook Property.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated:  3/20/2018